# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TYRONE JEWETT,
    Petitioner,

    vs.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:18-cv-406

Barrett, J.
Bowman, M.J.

**REPORT AND**
**RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed

a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter

is before the Court on the petition, respondent's motion to dismiss (Doc. 7), and petitioner's

response in opposition (Doc. 9). For the reasons stated below, the undersigned recommends that

the motion to dismiss be granted and the petition be dismissed.

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

conviction and sentence:[1]

> {¶8} The Scioto County Grand Jury returned a 46-count indictment against
> Tyronne Jewett and 23 other defendants. The indictment charged Jewett with 41
> counts and various specifications. All of the defendants, including Jewett, were
> charged with engaging in a pattern of corrupt activities, conspiracy to engage in
> corrupt activities, and conspiracy to traffic in drugs (heroin and cocaine). The
> indictment also charged Jewett with multiple trafficking in heroin and cocaine
> offenses. After the trial court appointed counsel for Jewett, he entered a plea of not
> guilty to the charges.
>
> {¶9} The remaining facts are based upon the evidence produced at a jury trial. The
> Southern Ohio Drug Task Force received information that Jewett (also known as

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

"Blue" or "Ty"), who came from Dayton, was dealing heroin and cocaine in the Portsmouth area from 2014 until early 2015. Jewett purchased heroin and cocaine from Taevon Turnage in Dayton through Steven North, who acted as a middleman. Jewett sold the heroin and cocaine from several different residences in Scioto County. He then had the proceeds of the drug sales delivered or wired to Dayton in return for more drugs. Jewett instructed several individuals to wire the money to North. And several people drove Jewett or others on his behalf to obtain the drugs from Dayton.

{¶10} In January 2015 the police arranged six different controlled purchases of heroin and cocaine from Jewett by a confidential informant. The drugs seized from those transactions went to the Bureau of Criminal Investigation ("BCI") where the lab found varying amounts of heroin and cocaine. BCI forensic scientist Megan Koentep testified that the laboratory did not quantitate submitted substances, i.e., BCI did not determine what percentage of the substance tested is actually heroin or cocaine—it did not test for the purity of the drug.

{¶11} Many of Jewett's co-defendants, who were almost all drug addicts, testified that they purchased heroin and cocaine from him, drove to Dayton to get the drugs for him and to give money to North, and permitted Jewett to use their houses in Scioto County to deal drugs. They provided testimony, mostly without objection, about the types and amounts of drugs purchased from Jewett and transported by or on behalf of him.

{¶12} After the task force had evidence of the six controlled purchases of heroin and cocaine, the police stopped an SUV driven by Jewett's accomplice, Christopher Wolfe, based on Wolfe's driving while under suspension. Jewett was in the front passenger seat. They discovered that Jewett had an arrest warrant on an unrelated Gallia County indictment and found a loaded semiautomatic handgun underneath Jewett's seat, multiple cellphones in his possession, including the one, on which he made the drug transactions, digital scales and hypodermic needles in his coat, and $1,563 on his person. They arrested him and took him to jail.

{¶13} Portsmouth Police Detective Lee Bower testified that based on his experience, he was able to look at various quantities of drugs and estimate how much they weighed. Jewett did not object to the trial court qualifying him as an expert on giving estimates of weights of drugs based on appearance. By contrast BCI forensic scientist Koentep testified that the BCI weighs the submitted substances because they cannot be sure of the weight if they just looked at it.

(Doc. 6, Ex. 14).

## II. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On April 16, 2015, the Scioto County, Ohio, grand jury returned a forty-six-count indictment against petitioner and twenty-three co-defendants. Petitioner was charged with forty-one counts, including twenty-seven counts of drug trafficking, two counts of trafficking in drugs/major drug offender, two counts of possession of criminal tools, five counts of money laundering, and one count each of engaging in a pattern of corrupt activities, conspiracy to engage in corrupt activities, weapon under disability, illegal conveyance of a drug of abuse into a detention facility, receiving stolen property, and conspiracy to traffic in drugs. (Doc. 6, Ex. 1). Petitioner, through counsel, entered a plea of not guilty to all counts. (Doc. 6, Ex. 2).

Prior to trial, petitioner filed a motion to suppress and supplemental motion to suppress evidence and statements made to the police. (Doc. 6, Ex. 3, 4). The trial court denied petitioner's motions after holding a hearing on the matter. (Doc. 6, Ex. 5).

On September 8, 2015, following a jury trial, petitioner was found guilty of thirty-three counts, including twenty-two counts of trafficking in heroin or cocaine, two counts of possession of criminal tools, three counts of money laundering, and one count each of engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, weapons under disability, illegal conveyance of a drug of abuse into a detention facility, receiving stolen property, and conspiracy to traffic in drugs. (Doc. 6, Ex. 7). Petitioner was sentenced to serve a total aggregate prison sentence of forty years in the Ohio Department of Corrections, with sixteen years being mandatory. (Doc. 6, Ex. 8).

On October 2, 2015, petitioner, through counsel, filed notice of appeal to the Ohio Court

of Appeals.  (Doc. 6, Ex. 9).  Petitioner raised the following five assignments of error:

**Assignment of Error One**:  The trial court erred in not granting Defendant-Appellant's motion to amend the indictment made at the close of the State's case.

Issue One.  In prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(a) through (f), it must be proven that the weight of pure cocaine meets the statutory threshold.  Herein, the state failed to prove the weight of pure cocaine in Counts Four, Nine, Thirteen, Fifteen, Sixteen, Seventeen and Thirty. Since the language in R.C. 2925.11 and R.C. 2925.03 as to cocaine offenses is the same the penalty enhancement in these counts must be reversed and vacated.

**Assignment of Error Two**:  The trial court erred in not granting Defendant-Appellant's motion for acquittal.

Issue One.  If reasonable minds could not reach the conclusion that the trier of fact did then a conviction must be overturned.  Herein, Defendant-Appellant's convictions as to certain counts are based exclusively upon lay testimony of the identity and weight of controlled substances.  Without the drugs, there is insufficient evidence they were controlled substances and what they weighed. Defendant-Appellant's conviction must be overturned.

**Assignment of Error Three:**  Defendant-Appellant's convictions are against the manifest weight of the evidence.

Issue One. When a conviction is against the manifest weight of the evidence it must be reversed and a new trial ordered.  Herein, Defendant-Appellant's conviction is based upon the testimony of drug addicts and co-defendants who made plea agreements with the state, plus expert witnesses who gave conflicting opinions of how to identify and weigh controlled substances.  Defendant-Appellant's convictions are against the manifest weight of the evidence and must be reversed and a new trial ordered.

**Assignment of Error Four:**  Trial counsel provided constitutionally ineffective assistance in violation of Defendant-Appellant's rights under the Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

Issue One.  Under R.C. 2945.71 a person charged with a felony must be brought to trial within 90 days after arrest if he is incarcerated the entire time prior to trial. Herein, Defendant-Appellant was arrested on January 25, 2015, tried starting on August 31, 2015 and incarcerated the entire time.  This is a period of 228 days.

Trial counsel failed to move for dismissal. Trial counsel provided constitutionally ineffective assistance.

Issue Two. Ineffective assistance of counsel occurs where a lawyer has a duty to one client to contend for that which his duty to another client requires him to oppose. Herein, trial counsel's cross-examination failed to ask necessary questions of a witness with whom he had a conflict of interest with his representation of Defendant-Appellant. Trial counsel provided constitutionally ineffective assistance of counsel.

**Assignment of Error Five:** The trial court erred and denied Defendant-Appellant a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and were simplified from those given in its final charge to the jury and final jury instructions that were incorrect statements of Ohio law.

Issue One. Juries are presumed to follow curative instructions and an inadequate instruction that misleads the jury constitutes reversible error. Herein, the trial court gave two curative instructions as to the way to prove identity and weight of controlled substances. The instructions were incorrect statements of law. Defendant-Appellant was denied a fair trial and due process of law.

Issue Two. In prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(a) through (f), it must be proven the weight of pure cocaine meets the statutory threshold. Herein, the trial court gave a final jury instruction that weight of pure cocaine did not need to be proven. Since the language in R.C. 2925.11 and R.C. 2925.03 as to cocaine offenses is the same the jury instruction was an incorrect statement of Ohio law.

(Doc. 6, Ex. 10). Petitioner subsequently filed a motion to amend his brief. Therein, petitioner sought to add the following language to his second assignment of error:

Defendant-Appellant contends his convictions as to Counts Three (F-1), Four (F-3), Five (F-3), Six (F-1), Twelve (F-1), Twenty-five (F-1), Twenty-seven (F-1), Twenty-eight (F-1), Twenty-nine (F-1), Thirty (F-1), Thirty-one (F-1), Thirty-three (F-1), Forty (F-2), and Forty-one (F-1) are based upon the exclusive testimony of lay witnesses and not upon expert analysis and should therefore be reversed.

(Doc. 6, Ex. 11). On April 14, 2017, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 6, Ex. 14).

**Ohio Supreme Court**

On May 30, 2017, petitioner filed a pro se notice of appeal to the Ohio Supreme Court.

(Doc. 6, Ex. 15).  In his memorandum in support of jurisdiction, petitioner raised the following

three propositions of law:

1. The trial court erred in not granting the Appellant's motion to amend the indictment made at the close of the state's case, and in not granting his motion for acquittal, thus, the Appellant's conviction is against the sufficiency and manifest weight of the evidence.

2. The trial court denied the Appellant a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and final jury instructions that were incorrect statements of Ohio law.

3. Trial counsel was constitutionally ineffective when he failed to move for dismissal of all counts pursuant to Appellant's right to a speedy trial.

(Doc. 6, Ex. 16).  On September 27, 2017, the Ohio Supreme Court declined jurisdiction of the

appeal.  (Doc. 6, Ex. 18).

**Application to Reopen Appeal**

Meanwhile, on June 26, 2017, petitioner filed an application to reopen his appeal

pursuant to Ohio App. R. 26(B).[2]  (Doc. 6, Ex. 19).  Petitioner claimed that his appellate counsel

was ineffective for failing to raise an assignment of error challenging the trial court's decision

during voir dire to allow two allegedly biased jurors to sit for his trial.  On September 6, 2017,

the Ohio Court of Appeals denied petitioner's application upon finding that petitioner did not

include an affidavit as required under Rule 26(B)(5).  (Doc. 6, Ex. 20).

Petitioner filed a notice of appeal to the Ohio Supreme Court from the decision.  (Doc. 6,

---

[2] The motion was captioned as an "application for reconsideration," however petitioner stated in the application that he sought relief pursuant to Ohio App. R. 26(B).

Ex. 21).  In his memorandum in support of jurisdiction, petitioner raised the following two propositions of law:

1. The trial court abused its discretion when knowingly violating the jury selection process that allowed a bias juror to sit and hear the evidence against the Appellant, and direct appeal counsel was ineffective for failure to raise this Constitutional right to a fair trial by an impartial jury.

2. The trial court erred when allowing an admitted bias juror to sit and hear the evidence against the Appellant, and direct appeal counsel was ineffective for failure to raise this Constitutional right to a fair trial by an impartial jury.

(Doc. 6, Ex. 22).  On December 6, 2017, the Ohio Supreme Court declined jurisdiction over the appeal.  (Doc. 6, Ex. 24).

### Federal Habeas Corpus

On June 8, 2018, petitioner commenced the instant federal habeas corpus action.  (Doc. 1).  Petitioner raises the following four grounds for relief in the petition:

1. The trial court erred in not granting the petitioner's motion to amend the indictment and in not granting his motion for acquittal.

2. The trial court denied the petitioner a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and final jury instructions that were incorrect statements of Ohio law.

3. The trial court abused its discretion when knowingly violating the jury selection process that allowed a bias juror to sit and hear the evidence against the petitioner, and direct appeal counsel was ineffective for failure to raise this constitutional right to a fair trial by an impartial jury.

4. The trial court erred when allowing an admitted bias juror to sit and hear the evidence against the petitioner, and direct appeal counsel was ineffective for failure to raise this constitutional right to a fair trial by an impartial jury. The supporting facts/argument are at Page ID#13-16.

(Doc. 1 at PageID 5–9).

Respondent has filed a motion to dismiss the petition, to which petitioner has replied.

(Doc. 7, 9).

### III. THE PETITION SHOULD BE DISMISSED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[3] In

---

[3] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied.  *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009).  To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases."  *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478,

---

U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  *Harris*, 489 U.S. at 263 n.9.

485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

## A. Grounds One and Two

In Ground One, petitioner argues that the trial court erred by not granting his motion to amend his indictment and motion for acquittal. (*See* Doc. 1 at PageID 5–7). At the close of the prosecution's case, counsel for petitioner moved to amend the indictment for the cocaine trafficking counts that were enhanced beyond the fifth-degree based on the weight of the cocaine, arguing that the prosecution failed to present any evidence that the weight of the cocaine for these offenses were based on pure cocaine and not fillers.

With respect to his claim that the trial court erred in ruling on his motion for acquittal, petitioner argues that insufficient evidence was offered as to counts for which no drugs were seized or submitted to the BCI for analysis. Petitioner claims these counts were supported "solely upon the testimony of drug addicts and co-defendants, whose testimony was bought and paid for through plea deals to prove the identity and weight of the substances in these counts to the jury." (Doc. 1 at PageID 5).[4]

Related, in Ground Two, petitioner argues that curative instructions and the final jury instructions provided at trial concerning lay witness testimony incorrectly stated Ohio law and deprived him of his constitutional rights. (Doc. 1 at Page ID 7).

Petitioner raised these claims as assignments of error on direct appeal. In overruling petitioner's assignment of error regarding his motion to amend the indictment, the Ohio Court of

---

[4] Specifically, petitioner argues that "there were no drugs to analyze as to identity, weight or purity as to counts three, four, five, six, twelve, twenty-five, twenty-seven, twenty-eight, twenty-nine, thirty, thirty-one, thirty-three, forty and forty-one." (Doc. 1 at PageID 6).

Appeals found petitioner's claim regarding drug purity was without merit in light of the Supreme Court of Ohio's decision in *State v. Gonzales*, 81 N.E.3d 419 (Ohio 2017), holding that the entire compound, mixture, preparation, or substance is properly considered in determining the appropriate penalty under Ohio law:

A. Motion to Amend the Indictment

{¶16} In his first assignment of error Jewett asserts that the trial court erred by not granting his motion to amend the indictment.

. . .

{¶17} At the close of the state's case Jewett's trial counsel moved for a judgment of acquittal, which he subsequently modified to a motion to amend the indictment for the cocaine trafficking counts that were enhanced beyond fifth-degree felonies based on the weight of the cocaine involved. The requested amendment would not have changed the name or identity of the trafficking in cocaine charged. Ultimately, the jury convicted him of four of these trafficking in cocaine charges—Counts 4, 13, 15, and 30—with three of them being first-degree felonies and one of them being a fourth-degree felony.

{¶18} The state failed to present evidence that the weight of the cocaine for these offenses was based on pure cocaine instead of cocaine plus a filler. BCI forensic scientist Koentop testified that the laboratory does not quantitate controlled substances it tests, i.e., it does not determine what percentage of the substance is actually cocaine.

{¶19} Previously, in *State v. Remy*, 4th Dist. Ross No. 03CA2731, 2004-Ohio-3630, we held in a cocaine-possession case where the penalty was enhanced by the weight of the drug, "[t]he State need not conduct qualitative analysis to determine the purity of the cocaine" because "'the content or purity of cocaine is immaterial so long as there is *any amount* of cocaine in the compound or substance.'" (Emphasis sic.) *Id.* at ¶50, quoting *State v. Brown*, 107 Ohio App.3d 194, 202, 668 N.E.2d 514 (3d Dist. 1995).

{¶20} The Supreme Court of Ohio recently addressed this issue by initially holding that the offense level for cocaine possession was determined by the weight of the actual cocaine, not by the total weight of cocaine plus any filler. *State v. Gonzales*, [150] Ohio St.3d [261], 2016-Ohio-8319, [81] N.E.3d [405] ("*Gonzales I*"), affirming *State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461. On

appeal Jewett relies on the appellate court decision in *Gonzales*, 2015-Ohio-461. In affirming that decision the Supreme Court reasoned that this result was dictated by the unambiguous language of R.C. 2925.11(C)(4)(b) through (f), which require that a person possess a certain amount "of cocaine," not a compound or mixture that contains cocaine plus filler material, to be guilty of a higher-degree felony than a fifth-degree felony otherwise, which has no weight requirement. *Id.* at ¶ 17–20.

{¶21} In *State v. Sanchez*, [150] Ohio St.3d [488], 2016-Ohio-8470, [83] N.E.3d [883], affirming *State v. Sanchez*, 2016-Ohio-542, 59 N.E.3d 719 (6th Dist.) the Supreme Court of Ohio expanded its initial holding in *Gonzales I* to trafficking in cocaine by virtue of the fact that the penalty enhancement provision for trafficking offenses are identical to the ones for cocaine possession. *See* R.C. 2925.03(C)(4)(c)-(g). *See also State v. Valdez*, 3d Dist. Marion No. 9-16-01, 2017-Ohio-241, ¶ 148 ("Although *Gonzales* involved the interpretation of R.C. 2925.11(drug possession) and not R.C. 2925.03 (drug trafficking), the relevant penalty enhancement language of R.C. 2925.11(C)(4)(e) is identical to that of the relevant penalty enhancement language in R.C. 2925.03(C)(4)(f).

{¶22} Therefore, under *Sanchez* and the Supreme Court's initial decision in *Gonzales I,* "to substantiate an enhanced penalty for convictions for possession and trafficking in cocaine pursuant to R.C. § 2925.11(C)(4) and R.C. 2925.03(C)(4), the State must prove the weight of the actual cocaine, excluding any filer or cutting agents, involved in the offenses." *See State v. Hamilton*, 1st Dist. Hamilton No. 15CA010830, 2017-Ohio-230, ¶16.[1]

> [1] The same purity requirement has never been applied to trafficking and passion offenses involving other drugs like heroin. *See Gonzales*, [150] Ohio St.3d [261], 2016-Ohio-8319, [81] N.E.3d [405], ¶ 15, citing *Gonzales*, 2015-Ohio-461, ¶ 42 ("The appellate court compared this language to the provisions for marihuana and heroin in R.C. 2925.11 and found that these subsections did not modify 'drug involved' with 'of marihuana' or 'of heroin'").

{¶23} Nevertheless, in March 2017, the Supreme Court of Ohio, composed of a new panel of Justices, reconsidered and vacated its initial decision in *Gonzales I*, [150] Ohio St. 3d [261], 2016-Ohio-8319, [81] N.E.3d [405]. *See State v. Gonzales*, [150] Ohio St. 3d [276], 2017-Ohio-777, [81] N.E.3d [419] ("*Gonzales II*"). The Supreme Court held that "the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *Id*. at ¶ 18. Therefore, Jewett's reliance on the appellate court decision in *Gonzales*, 2015-Ohio-461, is misplaced because that decision has now been reversed by the Supreme Court.

{¶24} By that holding the Supreme Court also implicitly overruled its decision in *Sanchez*, which had relied solely on its initial decision in *Gonzales I* to expand it to cocaine trafficking cases because of the identical penalty enhancement provisions. Consequently, the trial court did not abuse its discretion by denying Jewett's motion to amend the counts charging him with enhanced felonies for trafficking in cocaine. We overrule his first assignment of error.

(Doc. 6, Ex. 14 at PageID 254–58) (footnote omitted).

With respect to petitioner's claim that the trial court improperly denied his motion for judgment of acquittal, the Ohio Court of Appeals also overruled petitioner's assignment of error. Specifically, the Ohio appeals court determined that because petitioner did not object to the contested lay testimony at trial that he waived all but plain error and failed to establish such error:

{¶28} Jewett asserts that there was insufficient evidence to support 14 of his convictions for trafficking in heroin (12) and cocaine (2) counts greater than a fifth-degree felony because they were based upon the exclusive testimony of lay witnesses rather than expert testimony.

{¶29} Jewett's motion for judgment of acquittal at the close of the state's evidence, which he renewed at the conclusion of all the evidence, was not premised on this ground. Instead, he based his motion at trial on the appellate court decision in *Gonzales*, 2015- Ohio-461, and modified it to a motion to amend the indictment to attack the cocaine trafficking counts that were greater than fifth degree felonies. As previously decided, that motion was meritless. He also claimed that there was insufficient evidence of gun specifications accompanying some of his charges.

{¶30} We reject Jewett's contention for several reasons.

{¶31} First, he cites no authority supporting his proposition that trafficking convictions cannot be based on the testimony of lay witnesses for the identity and weight of the drugs. *See State v. Kelly*, 2016-Ohio-8582, ¶ 79, [77] N.E.3d [388] (4th Dist.), citing App.R. 16(A)(7) ("court can summarily reject argument in assignment of error that is not supported by any legal authority").

{¶32} Second, for the most part, he did not object to the lay witnesses' testimony concerning the identity and weight of the heroin and cocaine involved in the contested trafficking charges; thus he forfeited all but plain error. *See State v. Blair*,

2016-Ohio2872, ¶ 86, 63 N.E.3d 798 (4th Dist.).

{¶33} Third, he does not claim plain error, and he does not assign as error the trial court's admission of lay testimony on the identity and weight of heroin and cocaine in the contested trafficking offenses. *See State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 25, citing *State v. Quarterman*, 140 Ohio St. 3d 464, 2014-Ohio-4034, ¶ 17-20, 19 N.E.3d 900 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *Wright v. Ohio Dept. of Jobs and Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 (where a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on his behalf); *see also State v. Owens*, 2016-Ohio-176, ¶ 59, 57 N.E.3d 345 (4th Dist.), quoting *State v. Nguyen*, 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, ¶ 41 ("'we need not address this contention because we review assignments of error and not mere arguments'").

{¶34} Fourth, notwithstanding Jewett's claims to the contrary, courts "have allowed lay witnesses to testify about the identity of a drug." *State v. Johnson*, 4th Dist. Gallia No. 13CA16, 2014-Ohio4032, ¶ 38. "The experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *State v. McKee*, 91 Ohio St.3d 292, 2001 Ohio 41, 744 N.E.2d 737 (2002), syllabus.

{¶35} Finally, in offenses where the state fails to recover and weigh the drugs, the offender may be convicted of the offense and the penalty enhancement associated with the weight of the drug involved based on the testimony of lay witnesses, even in the absence of expert testimony, as long as a proper foundation is made. *See Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St. 3d 334, 2010-Ohio-2449, ¶ 28, 933 N.E.2d 1063 (conviction for trafficking in cocaine with a major-drug-offender specification can be supported by lay testimony where no drug is recovered and no testing is performed). Notably, Jewett argues only that his 14 trafficking convictions are not supported by sufficient evidence because of his general proposition that "they are based upon the exclusive testimony of lay witnesses and not upon expert analysis." He does not contend that an improper foundation was laid for these unspecified witnesses' lay testimony.

{¶38} Therefore, Jewett forfeited his claim on appeal and has not established any error, much less plain error, by the trial court in denying his motion for judgment of acquittal. We overrule his second assignment of error.

(*Id.* at PageID 259–61).

Finally, as to petitioner's jury instructions claim as raised in Ground Two, the Ohio Court of Appeals overruled the assignment of error, finding that the instructions were correct statements of Ohio law and that petitioner waived all but plain error by failing to object to the alleged error at trial:

{¶52} In his fifth assignment of error Jewett contends that the trial court erred when it gave curative and final instructions that incorrectly stated Ohio law. A jury instruction must present a correct, pertinent statement of the law that is appropriate to the facts. *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 25. "'Our review concerning whether jury instructions correctly state the law is de novo.'" *Kelly,* 2016-Ohio-8582, [77] N.E.3d [388], ¶86, quoting *State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶15.

{¶53} At the state's request during Jewett's cross-examination of BCI forensic scientist Koentep, the trial court instructed the jury that "drugs can be identified by expert witnesses and also by lay witnesses who are knowledgeable of the drugs" and that "it is not necessary to quantitate exactly how much is in it."

{¶54} And in its final jury instructions the trial court gave the following instruction on the identity and weight of the drugs for charged offenses:

The burden is upon the State to show beyond a reasonable doubt the identity of the drugs and the weight of the drugs when the weight of the drugs is over one gram. The State does not have to prove the weight of the drug if they are not over one gram. The State may do that in several ways. First, the State may prove the identity and weight of the drugs by laboratory testing. In this case, the State has introduced lab reports to identify the drugs in question and to determine the weight.

Second, the State may use lay witnesses to prove the identity and weight of the drugs. You have hea[r]d several lay witnesses, in this case drug addicts, testify to the identity of certain drugs, that is, that certain substances were heroin, cocaine or marijuana and to give an opinion as to the weight of certain drugs. You are instructed that the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity and weight of a controlled substance if a foundation for this testimony is first established. The State is entitled to establish both the identity and the weight of a drug through circumstantial evidence as long as a lay witness has firsthand knowledge and a reasonable basis, grounded either in experience or specialized knowledge, for arriving at the opinion expressed.

{¶55} The trial court's curative instruction that the state did not need to establish the purity of the controlled substance was correct for the cocaine and heroin trafficking charges with elevated felonies for the same reasons we previously discussed in resolving Jewett's first assignment of error. *See Gonzales II*, [150] Ohio St. 3d [276], 2017-Ohio-777, [81] N.E.3d [419].

{¶56} Additionally, Jewett did not object to the court's curative and final instructions that the state could generally use lay witnesses to prove the identity and weight of drugs if a foundation for the testimony is first established. Instead, his trial counsel conceded that lay witnesses can express an opinion on the identity of the controlled substance. He thus forfeited all but plain error. *See State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 203. And he does not argue plain error on appeal. *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17-20 (court need not consider plain error where appellant fails to timely raise plain-error claim).

{¶57} Furthermore, as we decided in our disposition of Jewett's second assignment of error, the trial court did not commit error, much less plain error, by instructing the jury on the general propriety of lay witness testimony concerning the identity and weight of the drugs were a proper foundation for the testimony exists. *McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737, at syllabus; *Garr*, 126 Ohio St.3d 334, 2010-Ohio-2449, 933 N.E.2d 1063, at ¶ 28. We overrule his fifth assignment of error.

(*Id.* at PageID 267).

Petitioner is not entitled to federal habeas relief based on Grounds One or Two of the

petition. As an initial matter, petitioner procedurally defaulted his claims concerning lay witness

testimony and jury instructions by failing to object to the alleged errors at trial. Ohio's

contemporaneous objection rule is a firmly-established, adequate and independent state

procedural rule, which serves to foreclose federal habeas review when relied on by the state

courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir.

2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d

517, 525 (6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that

Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged

trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

The Ohio Court of Appeals clearly enforced the state procedural bar with respect to petitioner's assignments of error not objected to at trial by reviewing petitioner's assignments of error under plain error analysis. (*See* Doc. 6, Ex. 14 at PageID 260, 268–69). Specifically, the Ohio appeals court noted that petitioner forfeited all but plain-error review with respect to the lay witness testimony regarding the identity and weight of the drugs and his jury instruction claims. (*See id.*). As such, the state appellate court's plain-error review did not constitute a waiver of the state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000); *see also Goodwin*, 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry denying jurisdiction to hear petitioner's appeal must be presumed to rely on the same state procedural ground. *See Ylst*, 501 U.S. at 803. *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830, 840 (6th Cir. 2003).

Therefore, these claims are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485. No such showing has been made in this case.

Petitioner contends that he should be granted greater latitude as a pro se litigant.

However, to the extent that petitioner may contend that his pro se status or ignorance of the law constitute cause for his procedural defaults (*see* Doc. 9 at PageID 1767–68), it is well-established in the Sixth Circuit that such reasons are insufficient to establish cause to excuse a procedural default. *See e.g., Rogers v. Warden, Warren Corr. Inst*., No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.) (Report & Recommendation) ("[t]he petitioner's pro se status, ignorance of the law or procedural requirements, or limited access to legal materials does not constitute cause" to excuse his procedural default of his habeas claims), *adopted*, 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).

Because petitioner has not otherwise demonstrated that that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent," *see Murray,* 477 U.S. at 495–96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498,[5] petitioner has procedurally defaulted and waived his claims regarding lay witness testimony and jury instructions, as raised in Grounds One and Two of the petition.[6]

---

[5] It is noted that to establish a credible claim of actual innocence sufficient to excuse his procedural default, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard, as he has not supported his allegations of constitutional error with any new evidence of actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316.

[6] Even if the Court were to consider the merits of petitioner's defaulted claims, petitioner would not be entitled to relief. As noted by the Court of Appeals, petitioner failed to cite any authority "supporting his proposition that trafficking convictions cannot be based on the testimony of lay witnesses for the identity and weight of the drugs." (Doc. 6, Ex. 14 at PageID 259). More importantly for the purposes of this federal habeas corpus action, petitioner fails to identify any United States Supreme Court precedent so holding, such that this Court could find that the Ohio courts adjudication was an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Furthermore, as to petitioner's jury instruction claims, the Ohio Court of Appeals determined that the contested jury instructions were proper statements of Ohio law and this Court is

Petitioner is also not entitled to federal habeas relief with respect to his claim that the purity of the drugs was not established or that drugs were not admitted as evidence in support of several of his convictions.[7]  In this federal habeas proceeding, the Court must defer to and is bound by the state court's ruling on state-law issues.  *See, e.g., Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein) ("[B]ecause the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters."); *Meyers v. Ohio*, No. 1:14cv1505, 2016 WL 922633, at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (citing *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988)) ("federal habeas courts are bound by decisions of intermediate state courts on questions of state law unless convinced that the state's highest court would decide the issue differently"), *adopted*, 2016 WL 916602 (N.D. Ohio Mar. 9, 2016). *See also Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

As noted by the Ohio Court of Appeals in petitioner's direct appeal, the Ohio Supreme Court has determined that under Ohio law "the applicable level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *State v. Gonzales*, 81 N.E.3d 419, 424 (Ohio 2017).[8]

---

bound by the state court's ruling on state-law issues.  *See infra,* p. 20.

[7] Unlike petitioner's lay witness and jury instruction claims, petitioner did raise these issues at trial through his motions to amend the indictment and for acquittal.

[8] Although *Gonzales* involved cocaine possession, the Ohio courts have observed that the penalty enhancement provisions for trafficking offenses are identical.  *See, e.g.*, *State v. Valdez*, No. 9-16-01, 2017 WL 277578, at *23 (Oh. Ct. App. Jan. 23, 2017) ("Although *Gonzales* involved the interpretation of R.C. 2925.11 (drug possession) and

Furthermore, as to petitioner's claim that drugs were not admitted into evidence in support of several of his drug trafficking convictions, the Ohio Supreme Court has held that for offenses for which the state fails to recover and weigh the drugs, a conviction and penalty-enhancement based on the weight of the drug involved may be based on circumstantial evidence in the form of the testimony of lay witnesses. *See Garr v. Warden*, 933 N.E.2d 1063, 1067 (Ohio 2010).[9] *See also Davis v. Harris*, No. 1:18-cv-822, 2019 WL 1410106, at *3 (S.D. Ohio Jan. 9, 2019) (denying relief on the petitioner's claim that insufficient evidence was offered in support of his convictions because none of the drugs were seized, noting "neither the Ohio statute nor federal constitutional law requires that drug quantities be proven by measuring and offering in evidence drugs which have actually been seized"); *State v. McKee*, 744 N.Ed.2d 737 (Ohio 2001) ("the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established").[10] This Court is bound by the Ohio Supreme Court's decisions interpreting Ohio law. *See, e.g.*, *James v. Buchanan*, No. 2:18-cv-750, 2018 WL 6681787, at *5 (S.D. Ohio

---

not R.C. 2925.03 (drug trafficking), the relevant penalty enhancement language of R.C. 2925.11(C)(4)(e) is identical to that of the relevant penalty enhancement language in R.C. 2925.03(C)(4)(f)"). *See also Ohio v. Reyes*, No. 2017-CA-34, 2018 WL 1779366, at *4 (Oh. Ct. App. Apr. 13, 2018) (applying *Gonzales* to drug trafficking conviction).

[9] In *Garr*, the Ohio Supreme Court clarified that its decision in *State v. Chandler*, 846 N.E.2d 1063 (Ohio 2006)—holding that "[a] substance offered for sale must contain some detectable amount of the relevant controlled substance before a person can be sentenced as a major drug offender under R.C. 2925.03(C)(4)(g)"—"does not extend to cases where a substance offered for sale is not recovered or tested in order to ascertain whether it contains a detectable amount of controlled substance." *Id.* at 1064. As here, where a drug is not recovered, the Ohio Supreme Court specified that the offender may be convicted of a drug specification through direct or circumstantial evidence in a "properly proven case." *Id.* at 1067.

[10] As noted by the Ohio Court of Appeals, petitioner challenges the sufficiency of the evidence based on "his general proposition that '[the convictions] are based upon the exclusive testimony of lay witnesses and not upon expert analysis.' He does not contend than an improper foundation was laid for these unspecified witnesses' lay testimony." (Doc. 6, Ex. 14 at PageID 261). In this case petitioner similarly makes no challenge to the foundation offered for any of the witnesses against him to offer an opinion as to the identity or weight of the drugs.

Dec. 19, 2018) (Report and Recommendation) (deferring to the Ohio Supreme Court's interpretation of its own statutes as stated in *Gonzales*), *adopted* 2019 WL 2462371 (S.D. Ohio June 13, 2019).

Finally, petitioner is not entitled to federal habeas relief to the extent that he alleges that the witnesses against him—drug dealers and co-defendants—were not credible. (*See* Doc. 9 at PageID 1766). Petitioner contends that the prosecution relied "solely upon the testimony of drug addicts and co-defendants, whose testimony was bought and paid for through plea deals to prove the identity and weight of the substances in these counts to the jury." (Doc. 1 at PageID 6). However, it is not the province of this Court to assess the credibility of the witnesses at petitioner's trial. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court"). Aside from petitioner's previously discussed claims regarding lay witness testimony and that no drugs were offered into evidence or tested as to weight/purity, petitioner offers no other argument regarding the sufficiency of evidence offered in support of his convictions. *See supra* n.10. Accordingly, petitioner is not entitled to federal habeas relief based on his grounds for relief challenging the sufficiency of evidence.

Accordingly, in sum, petitioner is not entitled to federal habeas relief based on Grounds One or Two of the petition.

### B. **Grounds Three and Four**

In Grounds Three and Four of the petition, petitioner argues that the trial court erred upon letting two alleged biased jurors sit on the jury and that his appellate counsel was ineffective

for failing to raise his claims on direct appeal.   (*See* Doc. 1 at PageID 9–16).

Petitioner procedurally defaulted the claims asserted in Grounds Three and Four by failing to raise his claims on direct appeal or—as to the ineffective assistance of appellate counsel claims—in his application to reopen.  With respect to petitioner's failure to raise the underlying juror bias claims on direct appeal, the Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata*.  *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust*, 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

As noted above, petitioner claimed that his appellate counsel was ineffective for failing to raise the underlying claims in his 26(B) application, but the Ohio Court of Appeals dismissed the application based on petitioner's failure to include an affidavit as required under Rule 26(B). (*See* Doc. 10, Ex. 20).  Rule 26(B)(2)(d)'s requirement of a sworn affidavit is an adequate and

independent state procedural rule.  *See Thompson v. Anderson*, No. 1:08-cv-2913, 2010 WL 4025936, at *7 (N.D. Ohio Mar. 19, 2010) (Report and Recommendation) (collecting cases), *adopted,* 2010 WL 4026121 (N.D. Ohio Oct. 13, 2010).  *See also Jackson v. Sloan*, No. 1:17-cv-1081, 2019 WL 2234597, at *8–9 (N.D. Ohio Apr. 24, 2019) (Report and Recommendation) (reviewing applicable case law and concluding "failure to comply with Ohio App. R. 26(B)(2)(d), and the state appellate court's enforcement of the procedural rule, results in a procedural default foreclosing consideration of any grounds for relief that Petitioner attempted to raise therein"), *adopted*, 2019 WL 2233881 (N.D. Ohio May, 23 2019).  The Ohio Supreme Court's subsequent unexplained decision declining to accept jurisdiction over the appeal (Doc. 6, Ex. 24), must be presumed to rely upon the same procedural default.  *See Ylst,* 501 U.S. at 803-04.

Therefore, the claims alleged in Ground Three and Four of the petition are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court.  *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.  As noted above, no such showing has been made in this case.[11]  Because petitioner has not otherwise demonstrated that that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered petitioner

---

[11]  Because petitioner procedurally defaulted his ineffective assistance of appellate counsel claims, they do not constitute cause for the default of the underlying claims.  Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted.  *See Murray,* 477 U.S. at 488-89.  *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

has procedurally defaulted and waived the claims raised in Grounds Three and Four of the petition.

Accordingly, in sum, because petitioner's grounds for relief are procedurally defaulted or without merit, respondent's motion to dismiss should be granted and the petition for a writ of habeas corpus be dismissed with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 7) be **GRANTED** and the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[12]

A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

---

[12] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

TYRONE JEWETT,                                    Case No. 1:18-cv-406
      Petitioner,

                                      Barrett, J.
      vs.                                        Bowman, M.J.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).