## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**TYRONE JEWETT,**

        **Petitioner,**

        **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

        **Respondent.**

        **Case No. 1:18-cv-406**
        **JUDGE DOUGLAS R. COLE**
        **Magistrate Judge Bowman**

### OPINION AND ORDER

This cause is before the Court on Tyrone Jewett's Objections (Doc. 13) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 10) that the Court grant Respondent's Motion to Dismiss (Doc. 7) and dismiss Jewett's Petition for Writ of Habeas Corpus (Doc. 1), and is also before the Court on Jewett's Notice of "Newly Discovered Evidence" (Doc. 14). For the reasons below, the Court **OVERRULES** Jewett's Objections and **ADOPTS** the Magistrate Judge's R&R as to the issues it addresses. The Court, however, **STAYS** the petition to allow Jewett to exhaust his state court remedies as to the claim raised in his "Newly Discovered Evidence" filing.

### BACKGROUND

Petitioner Tyrone Jewett dealt drugs. But what ultimately drew the attention of local and state law enforcement was the magnitude of Jewett's drug peddling activities. After a lengthy investigation, Jewett was arrested, tried in state court, and found guilty on a host of charges. He subsequently appealed his guilty verdict to both

1

Ohio's intermediate and supreme courts. When he did not obtain a favorable outcome in any of those venues, he filed the instant habeas petition in this Court.

## A.  Jewett Is Tried And Found Guilty By The State Trial Court.

The Ohio Court of Appeals established the following facts giving rise to Jewett's conviction and sentence:

> {¶8}  The Scioto County Grand Jury returned a 46-count indictment against Tyrone Jewett and 23 other defendants. The indictment charged Jewett with 41 counts and various specifications. All of the defendants, including Jewett, were charged with engaging in a pattern of corrupt activities, conspiracy to engage in corrupt activities, and conspiracy to traffic in drugs (heroin and cocaine). The indictment also charged Jewett with multiple trafficking in heroin and cocaine offenses. After the trial court appointed counsel for Jewett, he entered a plea of not guilty to the charges.

> {¶9}  The remaining facts are based upon the evidence produced at a jury trial. The Southern Ohio Drug Task Force received information that Jewett (also known as "Blue" or "Ty"), who came from Dayton, was dealing heroin and cocaine in the Portsmouth area from 2014 until early 2015. Jewett purchased heroin and cocaine from Taevon Turnage in Dayton through Steven North, who acted as a middleman. Jewett sold the heroin and cocaine from several different residences in Scioto County. He then had the proceeds of the drug sales delivered or wired to Dayton In return for more drugs. Jewett instructed several individuals to wire the money to North. And several people drove Jewett or others on his behalf to obtain the drugs from Dayton.

> {¶10} In January 2015 the police arranged six different controlled purchases of heroin and cocaine from Jewett by a confidential informant. The drugs seized from those transactions went to the Bureau of Criminal Investigation ("BCI") where the lab found varying amounts of heroin and cocaine. BCI forensic scientist Megan Koentop testified that the laboratory did not quantitate submitted substances, i.e., BCI did not determine what percentage of the substance tested is actually heroin or cocaine-it did not test for the purity of the drug.

> {¶11} Many of Jewett's co-defendants, who were almost all drug addicts, testified that they purchased heroin and cocaine from him, drove to Dayton to get the drugs for him and to give money to North, and

2

permitted Jewett to use their houses in Scioto County to deal drugs. They provided testimony, mostly without objection, about the types and amounts of drugs purchased from Jewett and transported by or on behalf of him.

{¶12} After the task force had evidence of the six controlled purchases of heroin and cocaine, the police stopped an SUV driven by Jewett's accomplice, Christopher Wolfe, based on Wolfe's driving while under suspension. Jewett was in the front passenger seat. They discovered that Jewett had an arrest warrant on an unrelated Gallia County indictment and found a loaded semiautomatic handgun underneath Jewett's seat, multiple cellphones in his possession, Including the one on which he made the drug transactions, digital scales and hypodermic needles in his coat, and $1,563 on his person. They arrested him and took him to jail.

{¶13} Portsmouth Police Detective Lee Bower testified that based on his experience, he was able to look at various quantities of drugs and estimate how much they weighed. Jewett did not object to the trial court qualifying him as an expert on giving estimates of weights of drugs based on appearance. By contrast BCI forensic scientist Koentep testified that the BCI weighs the submitted substances because they cannot be sure of the weight if they just looked at it.

{¶14} The jury returned verdicts finding Jewett guilty of 33 of the charged criminal offenses, including the charges of engaging in a pattern of corrupt activities, conspiracy to engage in corrupt activities, and conspiracy to traffic in drugs, as well as 22 counts of trafficking in heroin or cocaine, and various specifications. The jury found him not guilty of the remaining counts. The trial court sentenced Jewett to an aggregate prison term of 40 years, with 16 years being mandatory. [1]

(State R., Doc. 6, at #252–54[2]).

---

[1] The facts related to Jewett's state court trial are taken from his appeal of that action, as the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004).

[2] Refers to PageID Number.

**B.** **Jewett Pursues Direct Appeal Of His Conviction.**

Just shy of one month after his sentencing, Jewett, through new counsel, appealed to the Ohio Court of Appeals for the Fourth District. In that appeal, he raised five assignments of error:

1.  The trial court erred in not granting Defendant-Appellant's Motion to Amend the Indictment Made at the close of the State's case.

2.  The trial court erred in not granting Defendant-Appellant's Motion for Acquital. [sic]

3.  Defendant-Appellant's convictions are against the manifest weight of the evidence.

4.  Trial counsel provided constitutionally ineffective assistance in violation of Defendant-Appellant's rights under the Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

5.  The trial court erred and denied Defendant-Appellant a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and were simplified from those given in its final charge to the jury and final jury instructions that were incorrect statements of Ohio law.

(State R., Doc. 6, at #188 (cleaned up)).

Jewett's first argument, which he raised in support of each of the first three claimed errors, went to how the state calculated the weight of the drugs at issue for felony enhancement purposes. According to Jewett, Ohio state law (i.e., Ohio Revised Code §§ 2925.11(C)(4)(b)–(f)) makes the weight of *the drug itself*, not the weight of the drug plus any filler, the relevant weight. He argued that, at his trial, the state had failed to introduce evidence that the drugs he sold consisted of pure cocaine. (*Id.*).

Absent evidence as to purity, Jewett went on, there was no way to determine the relevant weight of the drug itself.

The appeals court responded to Jewett's argument by observing that, at the time Jewett made the argument, the Ohio Supreme Court was contemplating that very issue in a pending case, *State v. Gonzalez*. In its first decision in *Gonzalez*, the Ohio Supreme Court decided that "weight" referred only to pure substance. But, on reconsideration, that Court reversed course, holding instead that the total weight of *the substance being sold* (i.e., the drug plus any filler) is what "counted" for felony enhancement purposes. (*See id.* (citing *State v. Gonzales*, 81 N.E.3d 419 (Ohio 2017))). In its decision in Jewett's matter, the appeals court relied on the final *Gonzales II* holding, and thus rejected this argument.

Separately, Jewett argued that there was insufficient evidence to support fourteen of his cocaine and heroin trafficking convictions because lay witnesses, rather than experts, testified as to the weight and identity of the drugs. (Doc. 6, at #250). According to Jewett, the lay witnesses lacked a sufficient foundation to offer opinion testimony on that topic. (*Id.*). Jewett also maintained these same convictions were against the manifest weight of the evidence because the jury cannot trust testimony of "drug addicts and co-defendants whose testimony the state obtained through plea deals." (*Id.*).

The appeals court also rejected these arguments, both on substantive and procedural grounds. As to the former, it noted that Ohio law allows lay witnesses to testify as to the weight and identity of a controlled substance, so long as counsel has

laid a proper foundation establishing the witness's personal knowledge to that effect. (*Id.*). *See State v. Mckee*, 744 N.E.2d 737, 738 (Ohio 2001). And the appeals court further observed that Jewett had largely declined to object to such testimony at trial, limiting any review to plain error. (Doc. 6, at #260). As for Jewett's argument directed at the testimony obtained through plea deals, the court held that the "weight and credibility of evidence are to be determined by the trier of fact." (*Id.* at #262).

His final merits-related argument was largely directed at his fifth claim of error, in which he took issue with jury instructions the trial court provided. (*Id.* at #251–52). Specifically, he appealed two curative instructions that the judge had given to the jury: (1) that the state did not need to establish purity of the substance for the trafficking enhancement to apply; and (2) that the state could use lay witnesses to prove the identity and weight of the drugs if a foundation for that witness was sufficiently established. (*Id.*). Essentially, he was arguing that the trial court committed in its jury instructions the same substantive errors described above—allowing the state to rely on total weight, rather than drug-only weight, and allowing the state to rely on lay witnesses (in part) to establish that weight.

Given its ruling on the substantive errors, the appeals court not surprisingly denied the jury-instruction argument, as well. Although Jewett's statement of error on this issue invoked "due process," the appeals court did not include an explicit due process analysis. Rather, the court determined that, because he "did not object to the court's curative and final instructions[,]" Jewett "forfeited all but plain error" (*id.* at

#268–69), and that, in any event, "the trial court's curative instruction that the state did not need to establish the purity of the controlled substance was correct" (*id.*).

For his final assignment of error, Jewett argued his trial counsel was ineffective because counsel failed to raise a speedy trial violation (there was none) and to adequately question a witness. (*Id.* at #250). The appeals court also rejected this ground. (*Id.* at #267).

Dissatisfied with that outcome, Jewett (now acting pro se) sought discretionary review in the Ohio Supreme Court, raising three propositions of law:

1. The trial court erred in not granting the Appellant's motion to amend the indictment made at the close of the state's case, and in not grating his motion for acquittal, thus, the Appellant's conviction is against the sufficiency and manifest weight of the evidence.

2. The trial court denied the Appellant a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and final jury instructions that were incorrect statements of Ohio law.

3. Trial counsel was constitutionally ineffective when he failed to move for dismissal of all counts pursuant to Appellant's right to a speedy trial.

(State R., Doc. 6, at #274). The Ohio Supreme Court denied jurisdiction. (*Id.* at #311).

## C.    Jewett Attempts To Reopen His Trial Court Appeal.

While his trial court appeal was pending before the Ohio Supreme Court, Jewett filed an application to reopen his initial appeal under Ohio Appellate Rule 26(B). (*Id.* at #313–20). In that application, he claimed that his appellate counsel was ineffective for failing to raise an argument related to two allegedly biased jurors during *voir dire*. The appellate court denied Jewett's petition on procedural grounds,

finding that Jewett had not included an affidavit, as required by Ohio Appellate Rule 26(B)(5). (*Id.* at #330–32).

Jewett appealed that decision to the Ohio Supreme Court too, raising two propositions of law:

1. The trial court abused its discretion when knowingly violating the jury selection process that allowed a bias [sic] juror to sit and hear the evidence against the Appellant, and direct appeal counsel was ineffective for failure to raise this Constitutional right to a fair trial by an impartial jury.

2. The trial court erred when allowing an admitted bias juror to sit and hear the evidence against the Appellant, and direct appeal counsel was ineffective for failure to raise this Constitutional right to a fair trial by an impartial jury.

(*Id.* at #336). The Ohio Supreme Court again declined jurisdiction. (*Id.* at #354).

## D. Seeking Relief From These Adverse State Court Decisions, Jewett Elected To Pursue Federal Habeas Relief.

Hoping he may have better luck in federal court, on June 8, 2018, Jewett filed the instant habeas petition (Doc. 1), raising four grounds for habeas relief:

1. The trial court erred in not granting petitioner's motion to amend the indictment and in not granting his motion for acquittal.

2. The trial court denied the petitioner a fair trial and due process of law when it gave curative instructions that incorrectly stated Ohio law and final jury instructions that were incorrect statements of Ohio law.

3. The trial court abused its discretion when it knowingly violated the jury selection process that allowed a bias [sic] juror to sit and hear evidence against the petitioner, and direct appeal counsel was ineffective for failure to raise this constitutional right to a fair trial by an impartial jury.

4. The trial court erred when allowing an admitted bias [sic] juror to sit and hear the evidence against the petitioner, and direct

> appeal counsel was ineffective for failure to raise this
> constitutional right to a fair trial by an impartial jury. The
> supporting facts/argument are at Page ID#13–16 [sic *passim*].

(Pet. for Habeas Corpus ("Habeas Pet."), Doc. 1, #5–9 (cleaned up)). Respondent
Warden of the Noble Correctional Institution ("Respondent") filed a Motion to
Dismiss the Petition (Doc. 7), to which Jewett responded (Doc. 9).

On August 20, 2019, the Magistrate Judge issued an R&R recommending that
the Court grant Respondent's Motion and dismiss the Petition. (Doc. 10). Tracking
the order of presentation in Jewett's habeas petition, the R&R advises that all four
grounds should be dismissed. As to Grounds One and Two, the Magistrate Judge
reasoned that, because Jewett (or his counsel) failed to object to the lay witness
testimony and jury instructions at trial, and lacking any indication of prejudice or a
fundamental miscarriage of justice, the claims are procedurally defaulted. (R&R at
#1788–89). As to Grounds Three and Four, the Magistrate Judge determined Jewett's
claims were also procedurally defaulted because he did not raise them on direct
appeal or in his application to reopen, respectively. (R&R at #1793–94). After an
extension of time until October 3, 2019, Jewett filed both a timely Objection to the
R&R[3] (Doc. 13), and a document captioned "Newly Discovered Evidence" (Doc. 14).

---

[3] The Docket reflects that Jewett's Objection was filed on October 4, 2019, which would be
out of time by one day. But Jewett is currently incarcerated, and his Objection is postmarked
October 1, 2019, which makes it timely. *See Houston v. Lack*, 487 U.S. 266, 276 (1988)
(determining a pro se prisoner's notice of appeal is filed at the time he "delivered it to the
prison authorities for forwarding to the court clerk"); *Armour v. Gundy*, 107 F.3d 870 (Table),
1997 WL 91462, at *1 (6th Cir. 1997) (noting a pro se inmate is afforded both three extra
days to file following service under Fed. Civ. R. 6(e) and his filings are deemed filed when
they are delivered to prison authorities for mailing).

## LEGAL STANDARD

If a party objects to a report and recommendation within the allotted time, the district court must review de novo any portion of the magistrate judge's report "that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Here, the petitioner is proceeding pro se. While a pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## LAW AND ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by the AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet and highly deferential standard," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), because all findings of fact by the state court are presumed to be correct and can be rebutted only by "clear and convincing evidence" *Mitchell v. Mason*, 325 F.3d 732, 737–38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). As to legal conclusions, a federal habeas court may overturn a state court's application of federal law only if "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (citation and quotation omitted). And habeas provides relief only for violations of the U.S. Constitution. State law determinations, incorrect or not, cannot serve as the basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

## A. Jewett's "Objection" To The R&R Is Too General To Warrant De Novo Review.

When reviewing a magistrate judge's report and recommendation regarding a prisoner's petition for writ of habeas corpus, "[a] judge ... shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). If a petitioner fails to object, the district court need not "review a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Similarly, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). This is because a general objection fails to focus the

district court's attention "on any specific issues of review, thereby making the initial reference to the magistrate useless." *Id.* The Sixth Circuit has opined that it "would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error," and there is no reason why a party should be able "to do the same to the district court reviewing the magistrate's report." *Id.*

The Sixth Circuit has reiterated this notion time and again. *See, e.g.*, *Agostini v. Collins*, No. 20-3028, 2020 WL 3815671, at *2 (6th Cir. June 15, 2020) (Thapar, J.) (noting a litigant is required "to file specific and timely objections to a magistrate judge's report in order to preserve the right to appeal a subsequent order of the district court adopting and approving that report"); *Mensah v. Mich. Dep't of Corr.*, 513 F. App'x 537, 538 (6th Cir. 2013) (explaining the consequences of failing to file specific objections).

Here, Jewett filed what he titled an "Objection" to the Magistrate Judge's R&R. (*See* Obj., Doc. 13, #1803). Consistent with that title, the first line states that he "[O]bjects to the Magistrate Judge's Report and Recommendation." (*Id.* at #1803). Beyond this vague general objection, though, Jewett identifies no specific portions of the R&R in which he claims that the Magistrate Judge got either the facts or the law wrong. Instead, he merely repeats the same arguments that he made to the Magistrate Judge in the first instance, and asks this Court to consider those arguments anew. That is not how it works. To be sure, a petitioner need not object to the R&R with surgical precision, but he must do something more than merely rehash

12

his opening arguments, without even bothering to identify where in the R&R the Magistrate Judge addressed those arguments, let alone argue how the R&R erred in what it had to say about them.

Because of his lack of specificity, Jewett's objection has the same effect as failing to file an objection at all and therefore does not warrant de novo review. Thus, the Court could simply adopt the Magistrate Judge's R&R outright. *See Thomas*, 474 U.S. at 150. Nonetheless, given that Jewett is proceeding pro se, the Court will briefly review the R&R in light of Jewett's *very* general objection.

## B. Jewett's Objections Are Without Merit And The Magistrate Judge's Report And Recommendation Will Be Adopted.

Jewett's Objection starts with his complaints about jury composition (Grounds 3 and 4), and then raises his concerns that the lay witness testimony and the curative jury instructions were improper (Grounds 1 and 2). Accordingly, the Court will address the issues in that order, as well. Last, the Court will touch on the "Newly Discovered Evidence" (Doc. 14) that Jewett filed along with his Objection.

### 1. *Jewett's Biased Juror Grounds For Habeas Relief Are Procedurally Defaulted.*

Grounds Three and Four of Jewett's claim for habeas relief are related, and will be addressed together. Jewett generally complains that the trial court judge permitted biased jurors to sit on the jury and that, because Jewett's direct appeal counsel failed to raise this issue, that counsel was ineffective. (Habeas Pet. at #9–10). In his objection, he raises the same challenge to the trial judge's conduct, but does

not appear to specifically re-raise his concerns about ineffective assistance. (Obj. at #1803–06).

To state Jewett's biased-juror concerns from his Petition and Objection a little more fully, Jewett maintained that his Sixth Amendment and Due Process rights were violated when the "trial court abused it's [sic] discretion when knowingly violating the jury selectin [sic] process" by permitting a "bias [sic] juror to sit and hear the evidence" against him. (Habeas Pet. at #9). Jewett points to two specific jurors— one with a prior felony conviction and another who expressed bias against drug dealers, but whom the trial court rehabilitated. (*Id.* at #12–16).

The Magistrate Judge properly recommended that the Petition be dismissed on these grounds because they are procedurally defaulted. (*See* R&R at #1794). That is because, as the Magistrate Judge determined, Jewett's failed to raise this issue on direct appeal meant that it was barred from reconsideration on res judicata grounds. (*Id.*). And res judicata, as the Magistrate Judge also noted, is an adequate and independent state law ground, thereby, as a general matter, foreclosing habeas review. (*Id.*).

Although ineffective assistance of appellate counsel in state court perhaps could provide, in appropriate circumstances, a means to bypass that procedural default, the Magistrate Judge considered, and properly rejected, that avenue here. That is because Jewett had also procedurally defaulted his claim of ineffective assistance of appellate counsel when he failed to comply with a procedural rule under Ohio Rule of Appellate Procedure 26(B), which is once again an adequate and

14

independent state law ground precluding review of *that* claim. (*Id.* at #1795). And, in any event, Jewett's Objection does not appear to challenge the Magistrate Judge's determination on the state ineffective assistance of appellate counsel claim.

In sum, Jewett's concerns about the allegedly biased jury provide no basis for overturning the Magistrate Judge's decision denying habeas relief on those grounds.

### 2. *Jewett's Lay Witness Testimony And Jury Instruction Grounds For Habeas Relief Are Procedurally Defaulted.*

Grounds One and Two of Jewett's Petition are directed more at the substance of the charged crimes. In Ground One, he advances two related complaints: that the trial court improperly failed to grant both his motion to amend the indictment and his motion for acquittal. He was entitled to amendment or acquittal, he claims, because his drug trafficking felonies were enhanced beyond the fifth degree based on weight, even though (1) the drugs were never recovered (and thus could not be weighed), and (2) the lay witness testimony against him (which was directed at weight) was not credible. (Habeas Pet. at #5–7). His second ground of relief then recasts the same substantive errors as violations of his rights to "fair trial and due process." This occurred, he says, when the trial judge gave "two curative instructions" and final jury instructions "that were incorrect statements of [Ohio] law"—the same alleged legal errors advanced in his first ground for relief. (*Id.* at #7–8).

The Magistrate Judge recommends that Jewett is not entitled to habeas relief on any of these claims. (R&R at #1788). As to his claim regarding the motion to amend the indictment to address the felony enhancements based on the drug's weight, the Magistrate Judge reasoned that a federal habeas court cannot provide habeas relief

based on an alleged error of state law. (*Id.* at #1791). As to Jewett's motion for acquittal based on the sufficiency of the evidence (lay witness testimony and circumstantial evidence) against him, the Magistrate Judge's recommendation was the same—that federal habeas courts must respect a state court's ruling on state law admissibility issues. (*Id.* at #1792–93). And as to Ground Two, the Magistrate Judge determined Jewett was procedurally barred from bringing that claim in habeas because he failed to object to the jury instructions at trial. Under Ohio law, that failure operates as a waiver as to all but plain error, which constitutes an adequate and independent state law ground foreclosing further review in habeas. (*Id.* at #1788–89).

In his Objection, Jewett does not appear to take issue with the Magistrate Judge's determination on the jury instruction issue. Thus, the Court will not review that finding here.

As to the drug weight issues, Jewett argues in his Objection that the Ohio Supreme Court's holding in *Gonzales II* was limited to situations where "drugs were actually confiscated," but does not apply where, as here, they were not. (Obj. at #1806). Moreover, he suggests that applying *Gonzales II* to the situation here, where no drugs were confiscated, and the weight was established by lay testimony, would violate his due process rights, as the evidence against him is legally insufficient, presumably as a constitutional matter. (*Id.* at #1807).

That argument fails for two reasons. First, to the extent that it is predicated on a claimed error of state law—i.e., the appropriate scope of *Gonzales II*—alleged

16

state law errors, as already noted, cannot provide a basis for habeas relief. *See Estelle*, 502 U.S. at 67.

The argument fares no better in its due process guise. As a conceptual matter, the Court acknowledges that evidence can be so inherently unreliable that its admission would raise due process concerns—states cannot imprison people based on a roll of the dice. *Summitt v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979) ("[a] defendant is denied due process only when [] evidence is so unreliable that its introduction renders a trial unfair."). But the evidence at issue here does not come close to presenting a constitutional problem. State law makes the weight of the drug plus filler the relevant weight, and that determination as to what state law requires binds this Court. Thus, the only question is whether allowing lay testimony as to weight offends the Due Process Clause. It does not. Estimating the weight of objects is well within the ken of average persons. *See, e.g., Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240-41 (6th Cir. 2010) (holding that color is within the scope of a lay witness' expertise, just as a lay witness may testify to "the appearance of persons or things … degrees of light or darkness, sound, size, [and] weight" based on personal observation.) (citing *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995)). And the testimony here, about the weight of drugs, came from witnesses who had close familiarity with the drugs at issue, as they likewise sold or purchased those drugs by weight. Thus, allowing such testimony here does not violate the Due Process Clause.

In any event, the testimony, including testimony about the "types and amounts of drugs purchased from Jewett and transported by or on behalf of him," occurred "mostly without objection." (*Id.*). Moreover, a Portsmouth Police Detective also testified that, based on his experience, he could "look at various amounts of drugs and estimate how much they weighed" and he gave estimates about the drugs Jewett was trafficking, again without objection. (*See id.* at #253–54). Given the lack of objection, such testimony can be reviewed only for plain error, which as described above, means it is insulated from habeas review.

In short, the Court concludes that the R&R correctly found that Jewett's allegations of the shortcomings in the State's evidence regarding drug weight do not provide a basis for habeas relief.

## *C.* Jewett's "Newly Discovered Evidence" Likewise Provides No Basis For Habeas Relief.

The last issue concerns allegations that Jewett advanced *after* the Magistrate Judge issued the R&R. More specifically, Jewett filed a document labeled "Newly Discovered Evidence" in which he appears to allege that the judge who presided over his criminal trial had a substance abuse problem. (*See* Petr's Newly Discovered Evid. ("New Evid."), Doc. 14, #1811–12). Jewett said he only recently learned of these allegations through a news report revealing that the family of Judge William T. Marshall, who presided over Jewett's trial, filed a guardianship petition in 2019 alleging that Judge Marshall was "coming to work d[r]unk" and that his "drinking was serve (sic) enough to be severely interfering with his ability to make fair choices

from the bench." (*Id.*). Jewett maintains this "may call into question his criminal conviction, based upon his criminal trial." (*Id.*).

Jewett's filing leaves the Court in somewhat of a quandary. To start, Jewett is unclear about how the newly discovered "evidence" (which consists of a single newspaper article published on May 16, 2019) allegedly affects his habeas petition. One possible reading of the "Newly Discovered Evidence" document is that Jewett offers it as additional evidence in support of his existing claims for habeas relief. For example, Jewett may be contending that Judge Marshall's supposed intoxication explains why he empaneled two allegedly biased jurors and gave allegedly inaccurate curative instructions. (*See* Habeas Pet. at # 7, 9 (asserting that the trial judge erred in allowing a biased juror to sit and in giving an inaccurate curative instructions)). Thus understood, Jewett's "Newly Discovered Evidence" document is an attempt to support existing Grounds 2-4 of Jewett's petition. (Habeas Pet. at #9, 13). As the Court already explained, though, Jewett failed to raise the issue of the biased jurors or the curative instruction on his direct appeal, and thus is procedurally barred from raising those issues in a habeas petition. That is, those existing claims failed for *legal* reasons, not factual reasons, and thus additional factual evidence does not benefit Jewett.

To be sure, a different result may follow if the "new evidence" went to Jewett's actual innocence, as such evidence can serve as a gateway allowing the Court to consider otherwise-defaulted claims. *Bousley v. U.S.*, 523 U.S. 614, 622 (1998). But here, the "new evidence" does not go to Jewett's innocence, but rather to the trial

judge's competence to serve in that role given alleged substance abuse issues. Thus, *Bousely* provides no assistance to Jewett. Accordingly, the new evidence does nothing to advance Jewett's existing habeas claims, whether directly (i.e., on the merits), or indirectly (i.e., by providing a gateway).

Separately, though, Jewett may have intended his "Newly Discovered Evidence" document *not* as support for his existing claims, but rather as setting forth a new habeas claim, different from those already asserted. For example, the document references Judge Marshall's alleged substance abuse problem, and then suggests that such evidence "was serve (sic) enough to be severely interfering with his ability to make fair choices from the bench." (New Evid. at #1812). Construed liberally, which the Court will do as Jewett is proceeding pro se, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), Jewett may be asserting that having a trial judge impaired by drugs or alcohol would violate Jewett's due process rights. That is, Jewett's "Newly Discovered Evidence" should perhaps be understood as a motion to amend his original habeas petition to include a new free-standing due process claim.

Even if that is what the document is, though, Jewett still faces obstacles. First, habeas has an exhaustion requirement, and Jewett has not exhausted this due process claim in state court. *See generally Eakes v. Sexton*, 592 Fed. App'x 422 (6th Cir. 2014) (explaining that habeas' exhaustion requirement applies to claims based on newly discovered evidence). That is, Jewett has not shown that he has sought relief in state court based on his "newly discovered evidence," nor has he shown that there are no vehicles available under state law for doing so.

Adding this new claim (if that is what it is) would thus make Jewett's habeas petition a "mixed petition," containing both exhausted claims, like those discussed above, and unexhausted claims, like the newly discovered "incapacitated judge" due process claim. Federal habeas courts confronted with mixed petitions have the discretion to stay, rather than dismiss, the habeas petition, but only for the time necessary to allow the petitioner to pursue state court relief. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). There is a limit, however, on the discretion to issue a stay in such circumstances. In particular, a stay is inappropriate if the "unexhausted claims are plainly meritless," if the petitioner cannot show "good cause" for the failure to exhaust, or if there is evidence that the petitioner is engaging in intentionally dilatory litigation tactics. *Id.* at 277. In that case, the Court should dismiss the petition, including the unexhausted claims. *Id.*

Here, evidence of the trial judge's alleged substance abuse problem apparently did not surface, at least publicly, until after Jewett's 2015-2017 direct appeal process had ended. (State R. #165-249). This is arguably good cause to explain why Jewett did not raise this new constitutional claim in the state court proceedings, at least in the first instance. Additionally, Jewett raised concerns regarding his trial judge's alleged substance abuse problems in his filing in this action in October 2019, which is only 5 months after the Cincinnati Enquirer ran a story alerting Jewett to that issue. (New Evid. at #1814). Jewett's fairly prompt action in raising this concern suggests that he is not engaged in dilatory litigation tactics. Nor is it surprising that Jewett, who is acting pro se and thus may not be familiar with exhaustion

requirements, sought to raise the issue in this habeas proceeding—his only then-existing challenge to his conviction—rather than filing a separate state court action. Thus, the Court concludes that Jewett has acted in "good faith" and is not engaging in dilatory litigation tactics.

The remaining inquiry, then, is whether Jewett's claim is "plainly meritless." To Jewett's credit, "[t]he Due Process Clause requires [a] trial judge [who] is 'mentally competent to afford a hearing,'" *Norris v. United States*, 820 F.3d 1261, 1266 (11th Cir. 2016) (quoting *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912)), and the Court does not dispute that severe intoxication could rise to the level of incompetence. But, as *Norris* also makes clear, such allegations cannot be "based on unsupported generalizations." *Id*. Rather, to secure habeas relief, Jewett must present "'clear evidence' that the judge was mentally incompetent at the time of his trial." *Simington v. Premo*, 686 F. App'x 493, 494 (9th Cir. 2017) (citing *Deere v. Cullen*, 718 F.3d 1124, 1147-51 (9th Cir. 2013)). In the context of substance abuse issues, that would suggest that, to obtain habeas relief based on "new evidence" of substance abuse, Jewett would be required to show that his trial judge was intoxicated or under the influence of drugs during Jewett's actual trial. *See McLaurin v. Ballard*, Case No. 2:00-0275, 2009 WL 4662715 (S.D. W. Va., November 30, 2009); *Deere*, 718 F.3d at 1151. And the intoxication must have been severe enough to impair the trial judge's ability to properly evaluate the case or conduct the trial. *See Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927) (explaining that if a judge is no longer able to "hold the balance nice,

clear, and true between the state and the accused" then the court has denied the accused due process of law).

Measured against the high bar that applies to such claims, Jewett's "new evidence" falls well short, at least in its current form. Jewett submitted a single newspaper article discussing allegations that his trial court judge suffered from substance abuse problems, which Jewett believes "may call into question" Jewett's conviction. (New Evid. at #1811). Importantly, though, Jewett does not allege that the judge in fact was under the influence of drugs or alcohol during Jewett's trial. And, in that regard, Jewett's trial occurred in 2015, some three years before the judge "suddenly retired" according to the newspaper article.

At the same time, the newspaper article suggests that the trial court judge had undergone "rehab" after a "2013 drunk-driving incident," that he had been "hospitalized for his addiction at least three times after 2013," and that by the time of the news article (in 2019), he was allegedly suffering from "alcoholic encephalopathy," which the article describes as a "condition brought on by extreme drinking that limits the brain's ability to … function even when the subject is sober." (*Id.* at #1816–18). If true, these are troubling allegations that may have implications for the trials that the judge conducted, including Jewett's.

In sum, while Jewett falls short of the showing needed to justify relief on the current record, the Court cannot rule out the possibility that further factual development may change that result. Accordingly, the Court cannot conclude that a due process claim, if that is indeed what Jewett is advancing, is "plainly meritless."

Thus, in an abundance of caution, the Court determines it should treat Jewett's "Newly Discovered Evidence" filing as a motion to amend his habeas petition to add a due process claim. The Court further **GRANTS** that motion to amend, and **STAYS** further consideration of the petition to allow Jewett the opportunity to exhaust his claim in state court, for example through a motion for new trial based on the evidence of substance abuse, or a petition for post-conviction relief under Ohio Rev. Code § 2953.21, or whatever vehicle he deems appropriate under state law. Jewett shall have 90 days in which to initiate his efforts at exhaustion, and shall report to the Court within 30 days after his efforts to exhaust this claim in state court are complete.

## CONCLUSION

Based on the above, the Court **OVERRULES** Jewett's Objection (Doc. 13) and **ADOPTS** the Report and Recommendation (Doc. 10) as to Grounds 1-4 of the habeas petition. The Court, however, **STAYS** further consideration of the petition based on the "Newly Discovered Evidence" to allow Jewett an opportunity to exhaust the claim in state court. This stay is conditioned on Jewett's pursuing exhaustion within 90 days after this stay is entered, and returning to this Court within 30 days after state court exhaustion is completed. To ensure that the Court is timely apprised of future developments in this matter, both parties are **DIRECTED** to provide notice to this Court, as well as a courtesy copy, of any filings that they make in state court in connection with Jewett's efforts to exhaust his claim.

Alternatively, Jewett may voluntarily dismiss his "Newly Discovered Evidence" claim from this petition. If he elects to pursue that course, the Court:

(1) will enter judgment on the exhausted claims (Grounds 1-4) consistent with this Opinion; and (2) will adopt the Magistrate Judge's recommendation denying a certificate of appealability as to the determination on these grounds, as the Court agrees that no reasonable jurist could disagree with the determinations on these issues, and that any appeal would be objectively frivolous.

**SO ORDERED.**

October 8, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

25